UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA B., | NO: 1:18-CV-3074-TOR |
| Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 19, 20. The Court has reviewed the administrative record and the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion and denies Defendant's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work, and (2) such work "exists in significant numbers

in the national economy." 20 C.F.R. § 416.960(c)(2); *see Tackett*, 180 F.3d at 1098-99.

## ALJ'S FINDINGS

Plaintiff originally applied for supplemental security income disability benefits on June 18, 2008, alleging an onset date of April 15, 2007. Tr. 17. The application was denied initially and upon reconsideration. *Id*. On August 3, 2010, Plaintiff appeared at a video hearing before an Administrative Law Judge (ALJ). *Id*. The ALJ rendered a decision denying Plaintiff benefits on September 9, 2010. *Id*. at 14, 27. On February 10, 2012, the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Id*. at 1; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

Thereafter, Plaintiff sought judicial review of the Commissioner's final decision denying her supplemental security income. This Court affirmed the Commissioner's denial of Plaintiff's claim on September 9, 2013. Tr. 394-407. Plaintiff then appealed to the Ninth Circuit Court of Appeals. On July 21, 2015, finding an error in the ALJ's evaluation of the vocational expert testimony, the Ninth Circuit vacated this Court's judgment and remanded Plaintiff's case to this Court with instructions to remand to the Commissioner for further proceedings. *Id*.

at 441-42.  Pursuant to the Ninth Circuit's mandate, this Court remanded Plaintiff's case back to the Commissioner on September 16, 2015.  *Id*. at 438-39.

While her appeals were pending, Plaintiff protectively filed a second application for supplemental security income on June 29, 2013, alleging disability beginning May 1, 2012.  *Id*. at 314.  Plaintiff's second application was denied initially and upon reconsideration, and Plaintiff timely filed a request for a hearing on January 28, 2014.  *Id*.

On February 29, 2016, the Appeals Council issued an order addressing both of Plaintiff's pending applications.  Regarding Plaintiff's first application, the Appeals Council vacated the Commissioner's final decision denying benefits and remanded Plaintiff's case to an ALJ for further proceedings consistent with the Ninth Circuit's July 21, 2015, decision.  *Id*. at 458.  As for Plaintiff's second application for benefits, the Appeals Council deemed the application duplicative and instructed the ALJ to "consolidate the claim files, create a single electronic record and issue a new decision on the consolidated claims."  *Id*.

Pursuant to the Appeals Council's order, a new hearing was held before a different ALJ on July 11, 2017.  *Id*. at 314-15.  At the hearing, Plaintiff requested a closed period of disability from June 18, 2008 to April 2, 2016.  *Id*. at 347-48.

The ALJ issued an opinion on March 7, 2018.  *Id*. at 311-43.  At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial

gainful activity from June 18, 2008, through April 2, 2016, the closed period of disability. *Id*. at 317. At step two, the ALJ found that Plaintiff had the following severe impairments: affective disorder; anxiety disorder; and personality disorder. *Id*. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. *Id*. at 319-22. The ALJ then determined that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: work with no higher than an SVP 3; and only superficial contact with others.

*Id*. at 322. At step four, the ALJ found that Plaintiff had no relevant past work experience. *Id*. at 330. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was capable of performing in representative occupations, such as a hand packager, cleaner, and warehouse worker, which exist in significant numbers in the national economy. *Id*. at 331. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. *Id*.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income disability benefits under Title XVI of the Social Security Act. Plaintiff raises three issues for review:

(1) Whether the ALJ properly evaluated Plaintiff's mental impairments at step three;

(2) Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

(3) Whether the ALJ properly weighed the medical evidence;

ECF No. 19 at 2. The Court evaluates each issue in turn.

## DISCUSSION

### A. The "Paragraph C" Criteria Under Listings 12.00

Plaintiff asserts that the ALJ failed to evaluate the evidence and properly analyze her mental impairments under listings 12.04 (affective disorder), 12.06 (anxiety disorder), and 12.08 (personality disorder) at step three of the sequential evaluation process. ECF Nos. 19 at 4-6; 21 at 2. Specifically, Plaintiff argues that the ALJ committed reversible error by failing to make any specific findings on the paragraph C criteria under the relevant 12.00 listings. ECF No. 19 at 4.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listings").[1] *See* 20 C.F.R. §§

---

[1] A revised Listing of Impairments went into effect on January 17, 2017. The Court applies the listings that were in effect at the time the Commissioner's decision became final. *See* 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016) ("We expect

404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Tackett*, 180 F.3d at 1098. "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in [the listings], then the claimant is presumed disabled" without further inquiry. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Id.* "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

In determining whether a claimant with a mental impairment meets a listed impairment, the ALJ must follow a "special technique" to evaluate the claimant's symptoms and rate her functional limitations. 20 C.F.R. § 404.1520a(a). Specifically, the ALJ must consider: (1) whether specific diagnostic criteria are met ("paragraph A" criteria); and (2) whether specific impairment-related functional limitations are present ("paragraph B" and "paragraph C" criteria). 20 C.F.R. § 404.1520a(b). The criteria in paragraph A substantiate medically the presence of a particular mental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §

_____

that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

12.00(A)(2)(a). The criteria in paragraphs B and C, on the other hand, describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity.

To meet or equal listing 12.04 (affective disorder) or 12.06 (anxiety disorder), a claimant must satisfy (1) paragraphs A and B, or (2) paragraphs A and paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2). To meet or equal listing 12.08 (personality disorder), a claimant must only satisfy the requirements of paragraphs A and B; listing 12.08 does not include paragraph C criteria. *Id*.

In his decision, the ALJ elected to analyze listings 12.04, 12.06, and 12.08 simultaneously. Tr. 320. The ALJ apparently assumed the existence of the paragraph A criteria for all three listings, as he engaged in no discussion as to whether the paragraph A requirements were met. Instead, the ALJ's analysis focused almost exclusively on whether the paragraph B criteria had been satisfied for the listings at issue. Tr. 320-21. After evaluating each of the four requirements under paragraph B, the ALJ concluded that the paragraph B criteria had not been met. Tr. 321. Subsequently, in a short paragraph following the paragraph B analysis, the ALJ summarily confirmed that he had "also considered whether the 'paragraph C' criteria are satisfied" and concluded, without any analysis, that Plaintiff's evidence failed "to establish the presence of the 'paragraph C' criteria." *Id*.

Here, Plaintiff does not contest the ALJ's findings or analysis in respect to the paragraph B criteria. Instead, Plaintiff argues that the ALJ failed to properly consider the listings' paragraph C criteria. ECF Nos. 19 at 4-6; 21 at 2. For reasons discussed below, the Court agrees.

"The paragraph C criteria are an alternative to the paragraph B criteria under listings 12.02, 12.03, 12.04, 12.06, and 12.15." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). Specifically, the paragraph C criteria provide an alternative means of demonstrating disability for those claimants who experience "serious and persistent mental disorders" but whose "more obvious symptoms" have been controlled by medication and mental health interventions. *Id*. To satisfy the paragraph C criteria, a claimant must show that her mental impairment(s) has existed for at least two years, and that (1) she relied, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [her] mental disorder," and (2) despite her diminished symptoms and signs of her mental disorder, she has achieved only "marginal adjustment," meaning "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2)(b)-(c).

As noted, the ALJ concluded that the evidence in Plaintiff's case "fails to establish the presence of the 'paragraph C' criteria." Tr. 321. In making this

finding, the ALJ repeated the paragraph C requirements, but failed to discuss a single piece of medical evidence. *Id*. However, at step three of the sequential analysis, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" and make sufficient findings upon which a "reviewing court may know the basis for the decision." *Marcia*, 900 F.2d at 176; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Here, the ALJ made no findings, and provided no discussion regarding the paragraph C criteria under listings 12.04 and 12.06. Thus, the Court simply cannot determine from the ALJ's opinion how he came to the conclusion that Plaintiff's "severe" impairments did not meet or equal the Paragraph C criteria under the listings.

Moreover, the ALJ's preceding paragraph B analysis does not provide the missing, and necessary, "'factual foundations on which the ultimate factual conclusions are based.'" *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)). The Ninth Circuit has held that an ALJ need not state why a claimant failed to satisfy every different section of the listing of impairments where the factual support for his conclusion can be deduced from the ALJ's prior discussion of the medical evidence. *See Gonzalez*, 914 F.2d at 1200-01 (finding no error in failure to discuss why claimant's impairments did not satisfy listing because ALJ's five-page summary of the record was adequate statement of factual foundations upon which

a "reviewing court may know the basis for the decision."). Here, unlike in *Gonzalez*, the ALJ selectively discussed the medical evidence only as it related to the paragraph B criteria. The Court concludes that the ALJ's limited summary of the medical record, in addition to his specific findings relating to the paragraph B criteria, do not provide the necessary factual support for his conclusion that Plaintiff also failed to satisfy the paragraph C criteria.

Defendant argues the ALJ reasonably determined that Plaintiff failed to satisfy the paragraph C criteria because the record does not show that increased demands led to a deterioration in Plaintiff's functioning. ECF No. 20 at 3-4. Plaintiff contends otherwise, arguing that she meets the paragraph C requirements under the listings. ECF No. 19 at 4-6. Ultimately, these arguments require the Court to weigh the evidence, which in turn invites the Court to impermissibly perform the ALJ's role. The Court reviews the reasons the ALJ asserts in support of his decision. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). If the ALJ fails to make findings regarding a severe impairment, the Court cannot simply substitute its own findings and conclusions. *Treichler v. Comm'r of Social Security*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Defendant also argues that the ALJ's failure to address the paragraph C criteria is not erroneous because Plaintiff "proffers no plausible theory as to how her impairments satisfied the specific criteria for any given Listing." ECF No. 20

at 4 (citing *Lewis*, 236 F.3d at 514). However, at the 2017 hearing, Plaintiff's counsel presented evidence that Plaintiff's affective and anxiety disorders existed for more than two years and that Plaintiff had relied on mental health treatment, including therapy and medication, on an ongoing basis to diminish the symptoms and signs of her mental disorders. *See, e.g.*, Tr. 349-51 (explaining that Plaintiff "has been in mental health counseling since she was a child" and that "extensive counseling" has helped with some her symptoms). As for the "marginal adjustment" requirement, Plaintiff's counsel cites a Mental Residual Functional Capacity Assessment ("MRFCA") completed by Ms. Amy Zook, a treating mental health counselor, confirming that Plaintiff had "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate." *Id*. at 1046. At minimum, it is certainly possible that Plaintiff satisfied paragraph C's requirements under listing 12.04 and 12.06. However, as noted, it is ultimately not this Court's role to weigh the evidence. Where the ALJ fails to make findings regarding a severe impairment, the Court will not substitute its own findings and conclusions for those of the ALJ.

For the above reasons, the Court concludes the ALJ harmfully erred by failing to analyze or discuss the paragraph C criteria for listings 12.04 and 12.06.

Accordingly, the Court finds the case should be remanded for further evaluation of the evidence at step three of the sequential evaluation process.

### B. Adverse Credibility Determination

Next, Plaintiff asserts that the ALJ erred by failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective complaints. ECF Nos. 19 at 6-12; 21 at 3-6. Specifically, Plaintiff faults the ALJ for: (1) finding that Plaintiff's activities were inconsistent with disability; and (2) concluding that Plaintiff's treatment history supports a finding of non-disability. ECF No. 19 at 6-12.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 404.1527. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). As long as the impairment "could reasonably be expected to produce [the] symptoms," 20 C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347

1  (quotation and citation omitted).

2      However, in the event an ALJ finds the claimant's subjective assessment

3  unreliable, "the ALJ must make a credibility determination with findings

4  sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

5  discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

6  2002). In making such determination, the ALJ may consider, *inter alia*: (1) the

7  claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

8  testimony or between his testimony and his conduct; (3) the claimant's daily living

9  activities; (4) the claimant's work record; and (5) testimony from physicians or

10 third parties concerning the nature, severity, and effect of the claimant's condition.

11 *See id.* If there is no evidence of malingering, the ALJ's reasons for discrediting

12 the claimant's testimony must be "specific, clear and convincing." *Chaudhry v.*

13 *Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The

14 ALJ "must specifically identify the testimony she or he finds not to be credible and

15 must explain what evidence undermines the testimony." *Holohan v. Massanari*,

16 246 F.3d 1195, 1208 (9th Cir. 2001).

17      Here, the ALJ found that the medical evidence confirmed the existence of

18 medical impairments which could reasonably be expected to cause some of

19 Plaintiff's alleged symptoms. Tr. 323. However, the ALJ did not credit Plaintiff's

20 testimony about the intensity, persistence, and limiting effects of the symptoms.

*Id.* Rather, the ALJ concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* Because there is no evidence of malingering in this case, the Court must ultimately determine whether the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's testimony of the limiting effect of her symptoms. *Chaudhry*, 688 F.3d at 672. The Court concludes that the ALJ failed to do so.

To support his adverse credibility determination, the ALJ first identified several of Plaintiff's reported activities that he categorized as inconsistent with Plaintiff's "claims of debilitating functioning." Tr. 323. Specifically, the ALJ observed that Plaintiff sought but failed to obtain part-time work, she "was using public transportation and volunteering at a local hospital," she reported she could do a full range of housework, yardwork, and laundry, "she visited a man in jail that she liked on a weekly basis" and "also met men on the internet," she worked part-time in college, and she reported going to school full-time and doing fairly well with grades in 2012. *Id.* The ALJ also noted that Plaintiff had started working at Safeway in May 2016 and reported doing "pretty good" while working 30-40 hours a week. *Id.* at 324. According to the ALJ, these activities evidenced Plaintiff's "intact cognitive and social skills" and "good functioning inconsistent with a disabling condition." *Id.* at 323-24.

The Ninth Circuit has clarified that daily activities will only form the basis of an adverse credibility determination if the claimant's activities (1) contradict his or her other testimony, and (2) involve skills that could be transferred to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Here, the daily activities described by the ALJ do not appear to contradict Plaintiff's other testimony. For example, at the 2010 hearing, Plaintiff's counsel confirmed that Plaintiff had "made numerous attempts to try to volunteer, to get a GED, and trying to get herself slowly back into the workforce but [she] has not been able to do anything that even approaches a full-time basis yet." Tr. 41. Plaintiff reported that she used public transportation because she was scared to drive, she struggled to tolerate the stresses of a full work day, she had difficulty learning new tasks on a timely basis, and she often reacted poorly to her coworkers. *Id*. at 43-50. The activities the ALJ described—volunteering part-time, looking for part-time work, going to school, taking public transportation, and completing housework—are fully consistent with Plaintiff's claimed limitations caused by her mental impairments.

Furthermore, the ALJ failed to make "specific findings relating to [the daily] activities" and their transferability to a work environment to support his finding that Plaintiff's daily activities warrant an adverse credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The Ninth Circuit has held that

daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, as described by the ALJ, activities such as using public transportation, volunteering (notably, only once a week for 4-5 hours at a time), completing housework, meeting a man on the internet (not "men," as the ALJ described), and working part-time at her college, cannot reasonably be said to bear a meaningful relationship to the activities of fulltime employment in the workplace. *See Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (citations omitted)).

Additionally, the Ninth Circuit has consistently recognized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (citation omitted)). The fact that Plaintiff volunteered one-day a week for three or four hours at a time, completed housework, had a relationship

with her boyfriend, and attended classes "Monday through Thursday" from 8:30 a.m. to 11:30 or 12:00 p.m., during the period of disability are not specific, clear, and convincing reasons to reject her testimony. Likewise, the fact that Plaintiff looked for and eventually secured part-time employment at her college during the period of disability is not a sufficient reason to discount her testimony, in the absence of some evidence suggesting that she was pursuing full-time work. The Court rejects the ALJ's contrary interpretation of Plaintiff's work history. Tr. 323 (ALJ describing Plaintiff's attempts to obtain part-time work as "giv[ing] the impression of a subjective belief in her ability to work.").

The Court's examination of the record also shows that the ALJ erred in characterizing statements and documents contained therein to reach the conclusion that Plaintiff exaggerated her symptoms. For example, while Plaintiff did volunteer at a local hospital in 2009, she confirmed that she only volunteered one day a week for four to five hours and was eventually fired because of her mental impairments. Tr. 48-49. The ALJ also noted that "[w]hile the claimant told a consultative examiner she was doing poorly in school with a 2.0 GPA [citation omitted], she told her treating provider school was going well, she was on the President's List, and planned to do an internship." *Id*. But the record confirms that these statements were not contemporaneous, but rather made by Plaintiff more than a year apart. *See* Tr. 981 (September 16, 2013 psychological evaluation), 1348

(April 23, 2015 psychological examination). The Ninth Circuit has held that, when discussing mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, an ALJ may not single out moments of good health to discredit a claimant, especially in cases involving mental impairments, which often present episodically. *See Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228, 1234 (9th Cir. 2011).

Finally, the ALJ erroneously relied on Plaintiff's May 2016 employment at Safeway to support his adverse credibility determination, as this occurred after the end of the closed period of disability and outside the relevant period at issue. Tr. 324. As Plaintiff correctly notes, the ALJ's reliance on activities performed after April 2, 2016, do not speak towards Plaintiff's impairments during the relevant time period.[2] For these reasons, the Court agrees with Plaintiff that the ALJ

---

[2] The Court notes that the ALJ's decision contains several improper references to Plaintiff's May 2016 employment at Safeway. *See* Tr. 320 (finding Plaintiff moderately limited in her ability to interact with others, noting Plaintiff's "job as a cashier at Safeway," a "job[] that require[s] some degree of interaction with others"); 326 (discounting "DSHS opinions" because "the claimant has returned to work activity, inconsistent with a disabling condition."); 328-29

erroneously found Plaintiff's activities of daily living inconsistent with her symptom testimony.

Plaintiff also argues that the ALJ erred by finding her symptom testimony undermined by her treatment history. ECF No. 19 at 10. In addition to the alleged inconsistencies between Plaintiff's daily activities and her testimony, the ALJ discredited Plaintiff's testimony on the ground that "the objective medical evidence is not consistent with a disabling condition." Tr. 324. Specifically, the ALJ observed that, although the evidence "suggests some brief periods of exacerbated symptoms," "treatment records overall described the claimant as stable with no more than mild objective findings, if any, at many exams" and Plaintiff "largely remained cognitively and socially intact." *Id*. To support this conclusion, ALJ provided a summary of the medical evidence, with minimal explanation of which testimony he found not credible or which evidence contradicted that testimony.

The Court finds that the ALJ's explanation "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons

_____

(discounting Dr. Mee's 2008 report and Dr. Beaty's 2009 report because, *inter alia*, the doctors "had no knowledge of claimant's subsequent activities such as going to college and going back to work").

upon which' his adverse determination is based." *Treichler*, 775 F.3d at 1103

(quoting 42 U.S.C. § 405(b)(1)). First, the ALJ failed to adequately connect the

medical record to Plaintiff's symptom testimony. Rather than "specifically

identify[ing] the testimony" he found not credible, the ALJ concluded his summary

of the medical evidence with boilerplate statements, such as "the objective medical

evidence is not consistent with a disabling condition," "[Plaintiff's] treatment

records suggest she was stable and coping well," and "[Plaintiff's treatment

records show many normal mental status exams, with her provider often reporting

a stable mood." Tr. 324-25. Thus, the ALJ erred by failing to make a specific

finding linking the medical record to Plaintiff's testimony about the intensity or

degree of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1139-40 (9th Cir.

2014). When the ALJ does not specifically identify such inconsistencies, this

Court cannot correct the error by retroactively piecing together medical evidence

identified by the ALJ with conflicting claimant testimony independently identified

by the Court. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015).

Second, the ALJ made several findings concerning Plaintiff's treatment

history that are plainly erroneous. The ALJ stated that, "[g]enerally, the claimant's

Comprehensive Mental Health records reflect she is a 'rather vague' historian who

'speculates she might be bipolar' with benign mental status findings." Tr. 324.

However, this statement is pulled from a single progress note from June 27, 2007,

which was before the period of disability and at a time when Plaintiff's diagnosis was still in flux. *Id*. at 201. Additionally, while the ALJ asserted that Plaintiff's "mental status exams with her treating providers often showed no more than mild findings," the medical records cited by the ALJ to support this conclusion are from a four-month period in 2016, the final four months of the closed period of disability. Tr. 324. As noted, it is error for the ALJ to single out a few periods of temporary well-being from a sustained period of impairment and rely on those instances to discredit the Plaintiff. *Garrison*, 759 F.3d at 1017-18. Accordingly, the Court finds that the ALJ did not make a specific finding linking the medical records to Plaintiff's symptom testimony and, in any event, the record does not support the ALJ's findings.

In sum, the ALJ did not offer specific, clear, and convincing reasons for rejecting Plaintiff's testimony concerning her mental impairments. On remand, the Commissioner is instructed to also fully reevaluate Plaintiff's symptom testimony.

### C. Opinions of Medical Providers

Finally, Plaintiff faults the ALJ for improperly rejecting the opinions of eleven "DSHS examiners," treating mental health counselor Amy Zook, treating physician Dr. Julia Robertson, examining agency physician Dr. Sean Mee, and examining agency psychiatrist Dr. Michael Brown. ECF Nos. 19 at 13-21; 21 at 6-11. Plaintiff also argues that the ALJ erred by giving significant weight to

examining psychologist Dr. Thomas Genthe and agency psychological consultant Dr. Michael Brown. *Id.*

In analyzing an ALJ's weighing of medical evidence, a reviewing court distinguishes between the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Regardless of the source, an ALJ

need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

### 1. "DSHS examiners"

From 2007 to 2015, at least twelve different mental health practitioners, including mental health counselors, therapists, and psychologists, completed psychological evaluations of Plaintiff for DSHS. Many of the "DSHS examiners"

reported that Plaintiff's mental impairments moderately to severely interfered with her ability to perform basic work activities. *See* Tr. 281-82; 1631-33; 1641-43; 1654-55; 1660. The ALJ collectively referred to these psychological evaluations as the opinions of "DSHS examiners." *Id*. at 325-26. In discussing these records, the ALJ did not identify individual evaluators, with the exception of treating mental health counselor Jennifer Obeid-Campbell, M.S., LMHC, whom the ALJ specifically named. *Id*. at 325-26.

The ALJ gave five reasons for rejecting or discounting the "marked or severe limitations" expressed by the "DSHS examiners": (1) the evaluators are "comprised of non-acceptable medical sources espousing opinions inconsistent with persuasive opinion from acceptable medical sources"; (2) the opinions "are not well supported by medically acceptable clinical findings"; (3) the opinions "are inconsistent with claimant's activities of daily living"; (4) the opinions "are conclusory"; and, (5) the opinions are "heavily based upon the self-reports of claimant." Tr. 325.

Plaintiff argues that the ALJ erred by "failing to specifically or germanely address" the opinions of the "DSHS examiners." ECF No. 19 at 14. According to Plaintiff, the ALJ's imprecise discussion of "DSHS examiners" and the "DSHS psychological evaluations" results in "vague 'reasons' to reject these opinions, which are not clearly connected to the opinions being rejected." *Id*. Because of

the ALJ's imprecise analysis, Plaintiff asserts that it is unclear whether the ALJ properly reviewed these opinions. *Id.* The Court agrees.

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." *See* 20 C.F.R. § 404.1527(b), (f). "While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quoting *Molina*, 674 F.3d at 1111). The same factors used to evaluate the opinions of acceptable medical providers are used to evaluate the opinions of "other sources." *Id.* "Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

First, as a threshold matter, the record indicates that not all of the "DSHS examiners" were "non-acceptable medical sources," contrary to the ALJ's assertion. Tr. 325. While most of the psychological evaluations were completed by mental health counselors and therapists, at least three of the "DSHS examiners" were psychologists. *See* Tr. 1647-50 (Tae-Im Moon, Ph.D.); 1651-56 (Mark Duris, Ph.D.); 1657-65 (Thomas Genthe, Ph.D.). In fact, the ALJ seemingly recognized

this distinction when he later clarified, "*Some* of these examiners were not acceptable medical sources." *Id.* (emphasis added). And, regardless of whether a medical opinion comes from a practitioner who is not an acceptable medical source, this fact alone is not a germane reason for discounting that opinion.

Second, the ALJ erred by rejecting the opinions of the "DSHS examiners" because they "were heavily based on the claimant's self-reports" and "inconsistent with the claimant's activities of daily living." *Id.* at 325. As discussed, the ALJ failed to give specific, clear, and convincing reasons for discrediting Plaintiff's testimony. While an ALJ may reject a medical opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible," in this case, the ALJ did not "properly discount[]" Plaintiff's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted). Thus, these are not germane reasons supported by substantial evidence to discount the "DSHS examiners" opinions.

Third, while the ALJ discounted the opinions of "DSHS examiners" because they conflicted with other medical evidence in the record, the ALJ provided little illumination of this alleged conflict other than repeating that "the overall medical evidence of record shows ongoing routine care" and Plaintiff "is stable with many normal mental status exams." Tr. 325. As before, the ALJ offered no facts or

citations to the record to support this conclusion. Thus, the ALJ failed to provide "germane reasons" for rejecting these opinions.

Finally, the Court takes issue with the ALJ's ultimate weighing of the "DSHS examiners" opinions. Based on his analysis of the record, the ALJ concluded:

> [M]ost of the DSHS opinions in the record are not adopted and given some partial weight. They are given some weight because they were based on in-person examinations, and it is agreed the claimant has some limitations due to her mental conditions.

Tr. 326. However, the ALJ failed to specify which of the numerous psychological evaluations were rejected and which were given partial weight. Without a single citation to the record to clarify which "DSHS opinions in the record are not adopted and given some partial weight," the Court concludes that the ALJ's analysis is inadequate. *Id*.

The Court finds the ALJ failed to provide legally sufficient reasons to reject the opinions of the various "DSHS examiners." Therefore, on remand, the Commissioner is instructed to reconsider and evaluate all of these opinions.

## 2. Remaining Medical Opinions

In addition to the "DSHS examiners," Plaintiff asserts that the ALJ erred in evaluating the opinions of Thomas Genthe, Ph.D., Jay Toews, Ed.D., Amy Zook, Julia Robertson, M.D., Michael Brown, Ph.D., and Sean Mee, Ph.D. ECF No. 19

at 16-21. Considering the case is being remanded to readdress the opinions of the so-called "DSHS examiners," the Commissioner is instructed to also reevaluate the weight provided to the remaining disputed medical opinions on remand.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **GRANTED**. This case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file

**DATED** January 30, 2019.



THOMAS O. RICE
Chief United States District Judge